GARDEN, JUDGE:
The facts giving rise to this claim are tragic, but bizarre. The claimant is a licensed motor carrier of general commodities with its principal place of business in Williamson, West Virginia. At the close of business on April 4, 1977, the claimant had about 18 trailers, 13 tractors, and six straight trucks located in its terminal. The trailers and trucks were in various stages of being loaded with commodities for later delivery. One of the trailers, a 1964 Strick semitrailer tandem, was loaded for departure the next morning with about 40,000 pounds of Banner Sausage and Armour Products. That night the Tug River overflowed its banks, causing complete devastation in Williamson, including the inundation of the trailer mentioned above.
Charles Dawson, president and general manager of claimant, testified that after the flood waters had subsided and he had an opportunity to inspect his terminal, and in particular the subject trailer, he became concerned as to whether the cargo had *97 become contaminated as a result of the flood waters. As soon as the telephones in Williamson became operational, about three days after the flood, Mr. Dawson contacted the Interstate Commerce Commission Office in Charleston, which in turn referred him to the United States Department of Agriculture Office in Charleston. He was finally referred to the West Virginia Department of Agriculture, and that agency sent two of its representatives, Swansey L. Evans and Herma G. Hanshew, to Williamson in order to determine if the subject cargo had in fact been contaminated.
Mr. Evans and Mrs. Hanshew inspected the subject trailer’s cargo at claimant’s terminal early on the 12th of April and advised Mr. Dawson that the cargo was in fact contaminated and would have to be destroyed. At that point, a Lt. Williams of the National Guard was contacted, and it was agreed that the trailer would be taken to the city dump where its cargo would be disposed of, the city dump being located about four miles from the claimant’s terminal. The National Guard assisted the claimant and pulled the flood-disabled tractor, which had previously been hooked to the subject trailer, from the trailer. Claimant thereafter used one of its functioning tractors to move the trailer to the city dump. At the city dump, the trailer was positioned in accordance with the instructions of one Francis H. Leary, an employee of the West Virginia Department of Health with expertise in the field of solid waste collection facilities.
Mr. Leary testified that he had been sent to Williamson by his superiors on April 7 and had been placed in charge of the operations at the city dump. He recalled the trailer’s being brought to the dump and that the driver of the rig had positioned the same in the dump in accordance with his instructions. He testified that he had been contacted earlier by Mr. Evans, a lady coworker, and a Lt. Williams as to whether the load of contaminated meat could be disposed of at the city dump. He advised them that it could, but that they would have to bring sufficient personnel with them to unload the trailer and remove it from the site. Mr. Leary testified that, after the trailer had been spotted as instructed by him, he and Mr. Evans went to the rear of the trailer and looked in the door and *98 then went to the front of the trailer and discovered that the .tractor was gone. He then, quite significantly in our opinion, testified “and my blood pressure went up several degrees because it showed me that there was a foul-up somewhere, the trailer was not being removed immediately.”
On April 14, the cargo of the trailer not having been removed, and, in what we detect, a bit of anger, Mr. Leary ordered the destruction of the trailer, which was thereupon bisected by a bulldozer and thereafter buried with cargo in the city dump. Mr. Evans testified that on the morning of April 14, he orally advised Mr. Dawson on the downtown streets of Williamson that his trailer was to be destroyed that day. Mr. Dawson, in rebuttal testimony, denied that Mr. Evans imparted this information to him. Thus, the curtain fell on an episode, very reminiscent of a “Keystone Cop” comedy of the past.
Whether the destruction of the trailer resulted from a misunderstanding or failure of communication between Mr. Evans and Mr. Leary, we firmly believe that the respondents are liable for the unlawful conversion of claimant’s trailer. Testimony was presented at the hearing which leads us to the conclusion that on April the 14th, the claimant’s trailer had a fair market value of $6,000.00, and we thus make an award in favor of the claimant in that amount.
Award of $6,000.00.